**ELSTER ELECTRICITY LLC,**
**Plaintiff–Appellant,**

v.

**SCHLUMBERGERSEMA INC.,**
**Defendant–Cross–**
**Appellant.**

**No. 04–1052, 04–1066.**

United States Court of Appeals,
Federal Circuit.

July 30, 2004.

Steven B. Samuels, Norman L. Norris, Steven J. Rocci, Kevin Mark Flannery, Vincent J. Roccia, Woodcock Washburn, Philadelphia, PA, for Plaintiff-Appellant.

Richard M. Moose, Timothy D. St. Clair, Dority and Manning, Greenville, SC, for Defendant-Cross Appellant.

Before MAYER, Chief Judge, FRIEDMAN, Senior Judge, and LINN, Circuit Judge.

LINN, Circuit Judge.

Elster Electricity LLC ("Elster") appeals from a decision of the United States District Court for the District of Delaware, granting summary judgment of invalidity for lack of enablement of U.S. Patent No. 5,457,621 ("the '621 patent") in favor of defendant Schlumbergersema Inc. ("Schlumberger"). *ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs.*, Civil Action No. 01–077–SLR (D.Del. Sept. 17, 2003). Schlumberger conditionally cross-appeals the district court's decision granting summary judgment of literal infringement of the '621 patent. Because the district court did not err in finding that claims 1 and 13 of the '621 patent were not enabled, we *affirm* the grant of summary

judgment of invalidity. We do not reach the merits of Schlumberger's conditional cross-appeal.

## I. BACKGROUND

Elster, formerly know as ABB Automation Inc., owns the '621 patent. The '621 patent is directed to the power supply of an electrical energy meter for metering electrical energy supplied by an electrical service provider. '621 patent, col. 1, ll. 63–65. The '621 patent teaches a power supply including a transformer having first (primary), second (secondary), and third (tertiary or bootstrap) windings. *Id.* at col. 2, ll. 38–39. The following is a simplified diagram illustrating the power supply:

In the above transformer, current flowing through the first winding causes energy to build in the transformer, which is then transferred to the second winding to produce the output voltage of the power supply. *Id.* at col. 6, ll. 55–65. At the same time current is transferred to the secondary winding, current is also transferred from the transformer to the third winding in order to power the connected control circuitry. *Id.* at col. 6, ll. 65–66.

In February 2001, Elster filed suit against Schlumberger, alleging that Schlumberger's Vectron product infringed the '621 patent. Schlumberger cross-claimed for a declaration of invalidity and

non-infringement of the '621 patent. Elster moved for summary judgment of literal infringement and validity with respect to the asserted claims of the '621 patent. Schlumberger responded with a cross-motion for summary judgment of invalidity of the '621 patent. In March 2003, the district court granted Elster's motion for summary judgment that Schlumberger literally infringed claims 1, 2, and 13 of the '621 patent. *ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs.*, Civil Action No. 01–077–SLR (D.Del. Mar. 27, 2003) (order). The district court further granted Schlumberger's motion for summary judgment that the asserted claims of

the '621 patent were invalid for lack of enablement, while denying Elster's cross motion. *Id.* On September 17, 2003, the district court entered final judgment.

Elster timely appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. ANALYSIS

### A. Standard of Review

"We review the grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party." *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1323 (Fed.Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is only appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed.Cir. 1985) (en banc). Claim construction is a question of law we review de novo. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1451 (Fed.Cir.1998). "Enablement is a question of law with factual underpinnings; this court reviews the ultimate legal conclusion without deference." *CFMT, Inc. v. Yieldup Int'l Corp.,* 349 F.3d 1333, 1337 (Fed.Cir.2003).

### B. Main Appeal

Elster appeals the district court's grant of summary judgment that the '621 patent is invalid for lack of enablement. The parties primarily dispute the correctness of the district court's construction of "in response to" in claims 1 and 13 of the '621 patent. The district court construed the phrase "a controller ... generating said control signal in response to the output of said power supply" to require that "the controller generates the control signal based on a direct reaction from the second winding." *ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs.,* Civil Action No. 01–077–SLR, slip op. at 3 (D.Del. Mar. 27, 2003) (claim construction order). The district court then found the '621 patent invalid for lack of enablement, pointing out that although the claim requires that the controller directly respond to the second winding, the specification only enables a controller that responds to the third winding. *ABB Automation Inc. v. Schlumberger Res. Mgmt. Servs.,* Civil Action No. 01–077–SLR, slip op. at 10 (D.Del. Mar. 27, 2003) (memorandum opinion).

Elster argues that the district court's claim construction is not in accordance with the plain and ordinary meaning of "in response to." Specifically, Elster contends that the claim should be construed to cover a controller that generates a control signal in reaction to the output of the power supply, i.e., an indirect reaction to the output of the second winding, as reflected in the output of the third winding. Elster contends that an indirect response by the third winding to the second winding of the transformer is enabled by the specification. Schlumberger points out that even if the claim is construed to include an indirect and a direct response to the second winding, the written description must enable both. Schlumberger contends that under this construction, the summary judgment for invalidity was appropriate because the claim covers the third winding's direct response to the second winding, and the written description fails to enable such a direct response.

Claim 1 of the '621 patent provides:

1. A power supply for use in apparatus for electronically measuring or distributing electrical energy, said electrical energy defining an input voltage, said power supply comprising:

*a transformer comprising first and second windings,* wherein said input voltage is provided to said first winding so that current flows through said first winding, *wherein said second winding defines the output of said power supply;*
a switching member connected to said first winding, for permitting and preventing the flow of current through said first winding, wherein said switching member is operable in response to a control signal;
*a controller connected to said switching member and to a third winding of said transformer, for generating said control signal in response to the output of said power supply;* and
a voltage blocking clamp, connected to said transformer and said switching member, wherein said input voltage is applied to said voltage blocking clamp, for limiting and blocking the voltage applied to said transformer, said voltage blocking clamp comprising first and second transistors and biasing means connected to said first and second transistors, wherein said biasing means biases said first and second transistors so that the voltage provided by said voltage clocking clamp does not exceed a desired level.

'621 patent, col. 10, ll. 31–58 (emphases added). The claim recites that the "controller connected ... to a third winding" of the transformer responds "to the output of said power supply." *Id.* at col. 10, ll. 45–48. The claim also recites that "the output of said power supply" is defined by the second winding. *Id.* at col. 10, ll. 35–39. Therefore, in order to have the controller respond to the output of the power supply, the signal in the third winding must be responsive to the signal in the second winding. The district court appeared to recognize this principle by construing the claim limitation "in response to" to require

the third winding directly respond to the second winding. However, this claim construction is unduly restrictive because the claim encompasses any response—either direct or indirect—by the third winding to the second winding. Nonetheless, claims 1 and 13 are not enabled because the written description fails to teach any response between the third and second windings.

Section 112, paragraph 1 of Title 35 U.S.C. states:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same....

35 U.S.C. § 112, ¶ 1 (2000). Patent claims that are not enabled by the specification are invalid. *See, e.g., AK Steel Corp. v. Sollac and Ugine,* 344 F.3d 1234, 1245 (Fed.Cir.2003).

The power supply is described in the '621 patent specification as follows:

At the end of each cycle, transistor 302 turns off and allows the energy stored in the core of transformer 300 to flow to the output of the power supply, which "output" can be generally defined by secondary [winding] 312. Simultaneously, energy flows out of the bootstrap or tertiary winding 314 to power the control circuitry 304.

'621 patent, col. 6, ll. 61–66. This passage states that both the second and third windings of the transformer are responsive to the energy stored in the transformer by the first winding. However, this passage does not teach that the third winding is responsive to the second winding. Moreover, the specification teaches away from the third winding responding to the second winding, by stating that insulation between the second and third windings is desirable

to prevent interference between the two windings:

> Any leakage inductance between the bootstrap [third] winding . . . and the output [second] winding . . . causes inaccurate tracking between the voltage on capacitor 332 and the output voltage of the supply. This leakage inductance can cause poor load regulation of the supply. . . . Since the two windings are in direct contact, the bootstrap winding requires Teflon insulation to meet the isolation voltage specification.

*Id.* at col. 8, ll. 25–35. The passage teaches that interactions between the second and third windings are undesirable. Elster points to nothing in the specification that enables a response by the third winding to the second winding—either directly or indirectly. While the written description makes clear that both the second and third windings respond to signals in the first winding and to that extent are interrelated, the claim calls for the third winding to be responsive to, not merely representative of, signals in the second winding. Because the written description fails to teach a response between the second and third windings, the district court correctly concluded that claims 1 and 13 of the '621 patent were not enabled.

### C. Cross–Appeal

Because we find that the district court correctly found that claims 1 and 13 of the '621 patent were not enabled, we do not reach the merits of the district court's grant of summary judgment that Schlumberger literally infringed the '621 patent. *See, e.g., Purdue Pharma L.P. v. Faulding Inc.,* 230 F.3d 1320, 1329–30 (Fed.Cir.2000) ("Because we have upheld the district court's determination that the asserted claims of the . . . patent are invalid, it is unnecessary to address [the appellee's] cross-appeal from the district court's finding of infringement.").

### III. CONCLUSION

Because the district court correctly granted summary judgment that claims 1 and 13 of the '621 patent were invalid for lack of enablement, we affirm.